STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT


12-122


WILSON ACOSTA

VERSUS

B&B OILFIELD SERVICES, INC.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2010-5839 DIVISION "L"
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.


AFFIRMED AND RENDERED.


Paul D. Gibson
W. Corey Grimley
Donald H. Knecht, Jr.
Gibson, Gruenert & Zaunbrecher, P.L.L.C.
600 Jefferson Street, Suite 600
Post Office Box 3663
Lafayette, Louisiana 70502
(337) 233-9600
COUNSEL FOR PLAINTIFF/APPELLANT:
      Wilson Acosta

**Peter J. Butler, Jr.**
**Richard G. Passler**
**Breazeale, Sachse & Wilson, L.L.P.**
**909 Poydras Street, Suite 1500**
**New Orleans, Louisiana 70112**
**(504) 584-5454**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **R&T Oilfield Services, Inc.,**
    **f/k/a B&B Oilfield Services, Inc.**

**Bernard E. Boudreaux, Jr.**
**Breazeale, Sachse & Wilson, L.L.P.**
**23rd Floor, One American Place**
**Post Office Box 3197**
**Baton Rouge, Louisiana 70821-3197**
**(225) 387-4000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **R&T Oilfield Services, Inc.,**
    **f/k/a B&B Oilfield Services, Inc.**

**Anthony M. Fazzio**
**Law Offices of Anthony M. Fazzio**
**4906 Ambassador Caffery Parkway, Suite 1000**
**Lafayette, Louisiana 70508**
**(337) 406-1122**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **R&T Oilfield Services, Inc.,**
    **f/k/a B&B Oilfield Services, Inc.**

**GENOVESE, Judge.**

In this revocatory action, Wilson Acosta appeals the trial court's award of sanctions in the amount of $7,500.00 in attorney fees plus expenses of $65.04 in favor of R&T Oilfield Services, Inc. (R&T) f/k/a B&B Oilfield Services, Inc. (B&B, Inc.).[1] R&T answered the appeal seeking an increase in the amount of sanctions awarded by the trial court and an additional amount of sanctions for the filing of a frivolous appeal. For the reasons that follow, we affirm and render.

## FACTS AND PROCEDURAL HISTORY

The instant matter instituted by Mr. Acosta is predicated on an action involving the parties filed in Iberia Parish. In Iberia Parish, B&B, Inc. named Mr. Acosta, among additional defendants, in a lawsuit for the alleged theft of its intellectual property and trade secrets. Mr. Acosta filed a reconventional demand in that litigation asserting that the allegations against him were unfounded and that they were made in bad faith.

During the pendency of the Iberia Parish matter, Mr. Acosta filed a Petition for Revocation against B&B, Inc. in Lafayette Parish wherein he alleged as follows:

4.

> On March 22, 2010, a new Louisiana limited liability company was formed under the name of B&B Oilfield Services, LLC ("B&B, LLC"). At roughly the same time, B&B, INC. ceased conducting business and transferred/sold all or substantially all of its assets to B&B, LLC. As of the date of the filing of this matter, B&B, Inc.'s status with the Louisiana Secretary of State is listed as "inactive."

---

[1] As the caption reflects, Mr. Acosta instituted the present action naming B&B Oilfield Services, Inc. as a Defendant. By means of his First Amended Petition for Revocation, Mr. Acosta named as additional Defendants, R&T Oilfield Services, Inc. and B&B Oilfield Services, LLC. The judgment from which the present appeal is taken is in favor of R&T Oilfield Services, Inc.

5.

B&B, Inc.'s actions in divesting itself of all or substantially all of its assets, and allowing its status to become inactive, have both caused and/or increased its insolvency. These actions of B&B, INC. are prejudicial to the rights of the Petitioner to recover from B&B, INC. on its demand in the above-listed Iberia Parish case.

6.

Therefore, as an obligor of B&B, INC., Petitioner is entitled to bring this revocatory action to have B&B, INC. annul the sale and/or transfer of any and all assets that caused and/or increased the insolvency of B&B, INC.

By means of a First Amended Petition for Revocation filed October 1, 2010, Mr. Acosta formally named R&T Oilfield Services, Inc. and B&B, LLC, as Defendants in the revocatory action.[2] In his Second Supplemental and Amended Petition for Revocation filed December 23, 2010, Mr. Acosta asserted that after the Iberia Parish suit had been filed, B&B, Inc. changed its name to R&T Oilfield Services, Inc. "and sold or divested itself of all or substantially all of its assets, and is no longer conducting business."[3] Mr. Acosta further averred that:

6.

B&B, INC. has sold or transferred all or substantially all of its assets to other, separate entities, and in doing so, (1) has rendered itself incapable of doing business and generating income, (2) the sale or transfer of its assets was made for no[,] or nominal[,] consideration, to its own detriment and the detriment of its creditors, (3) the sale or transfer was a sham transaction designed to hide assets and deter creditors from seeking and collecting information on these assets, and/or (4) after the sale or transfer of assets, any consideration received, nominal or otherwise, was disbursed to former employees, directors, officers and/or shareholders, to the detriment of its creditors.

. . . .

---

[2] R&T responded with exceptions of no cause of action and lis pendens. The trial court maintained R&T's exception of no cause of action and granted Mr. Acosta leave to amend his pleadings. R&T's exception of lis pendens was overruled.

[3] R&T then filed another exception of no cause of action which was overruled by the trial court.

8.

Therefore, by selling all of its assets, B&B, INC. rendered itself incapable of doing business. It has no employees, no physical address, does not generate any revenue, and has no occupational license. Obviously, B&B, INC. has sold off all of its assets and shut down its business, and by doing so, has increased its insolvency.

9.

Furthermore, in shutting down its business and selling all of its assets, B&B, INC. either disbursed any proceeds of the sale to its shareholders or other persons, and/or sold or transferred the assets for no or nominal consideration, all to the detriment of its creditors. In doing so, B&B, INC. again here has increased its insolvency.

10.

As set forth in the original petition, as an obligor of B&B, INC., Petitioner is entitled to bring this revocatory action to have B&B, INC. annul the sale and/or transfer of any and all assets to B&B, LLC, or any other entity, that caused or increased the insolvency of B&B, INC.

On March 31, 2011, R&T filed the Motion for Summary Judgment and Sanctions which gives rise to the present appeal. R&T asserted that the pleadings, discovery responses, and affidavit "demonstrate that [Mr.] Acosta 'fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact' as required by [La.Code Civ.P.] art. 966(C)(2) and, thus, summary judgment should enter dismissing this revocatory action." The trial court agreed and granted the motion for summary judgment.[4]

On the issue of sanctions, R&T argued that they were entitled to judgment pursuant to La.Code Civ.P. arts. 863(D) and 1420(D) "on the grounds that because the petition and discovery answers, the accompanying [a]ffidavit, and the accompanying [m]emorandum, demonstrate that [Mr.] Acosta never has had admissible evidence to support the filing of this revocatory action, the [c]ourt should exercise its discretion in entering a judgment ordering sanctions against

---

[4] The record does not contain a formal judgment on the grant of this motion.

3

[Mr.] Acosta and his lawyers in favor of R&T." Following a contradictory hearing, the trial court requested post-hearing briefs setting forth a timeline of when "the information of the details of the asset purchase agreement" was provided, "as well as the fees and expenses incurred past that date."

The trial court rendered a Judgment on Motion for Sanctions on September 29, 2011, which reads, in pertinent part, as follows:

> In light of the information available to Plaintiff, Wilson Acosta and his counsel as of February 15, 2011, the continued pursuit of the litigation after that date was without reasonable basis. R&T [Oilfield] Services, Inc[.] has submitted to the [c]ourt the billing records of its counsel from February 15, 2011 forward regarding defense of this lawsuit. After review of same, the [c]ourt finds it is appropriate to award attorney fees to R&T Oilfield Services, Inc. in the amount of $7,500[.00] plus expenses of $65.04. Furthermore, Plaintiff is cast[] with all court costs incurred in this matter.

## ASSIGNMENTS OF ERROR[5]

On appeal, Mr. Acosta presents the following assignments of error for our review:

> 1. The trial court was clearly wrong in imposing sanctions pursuant to [La.Code Civ.P.] art. 863 against Plaintiff/Appellant in favor of Defendant/Appellee.
>
> 2. The trial court abused its discretion in imposing sanctions in the amount of $7,500[.00], expenses of $65.04, and all court costs incurred in this matter by Defendant/Appellee, in favor of Defendant/Appellee, pursuant to [La.Code Civ.P.] art. 863.

## LAW AND DISCUSSION

Louisiana Code of Civil Procedure Article 863, which authorizes the imposition of sanctions, provides as follows:

> A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose

---

[5]Although not included in his assignments of error, nor briefed to this court, Mr. Acosta asserts that "this Honorable Court should REVERSE the trial court's granting of R&T's Motion for Summary Judgment." We note that the judgment of September 29, 2011, from which this appeal is taken does not address the motion for summary judgment. Additionally, since Mr. Acosta failed to identify the trial court's grant of summary judgment as an assignment of error on appeal, this ruling of the trial court is not properly before this court and will not be addressed. Uniform Rules—Courts of Appeal, Rule 1–3 and Rule 2–12.4.

4

address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.

F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.

G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.

When considering the imposition of sanctions on appeal, an appellate court must apply two standards of review which are explained as follows:

> A trial court's determination regarding the imposition of sanctions is subject to the manifest error or clearly wrong standard of review. Once the trial court finds a violation of La.[Code Civ.P.] art. 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the abuse of discretion standard. *Stroscher v. Stroscher*, 2001-2769 (La.App. 1st Cir.2/14/03), 845 So.2d 518, 526; *Connelly v. Lee*, 96-1213 (La.App. 1st Cir.5/9/97), 699 So.2d 411, 414, *writ denied*, 97-2825 (La.1/30/98), 709 So.2d 710.

*Slaughter v. Bd. of Sup'rs of S. Univ. and Agric. and Mech. Coll.*, 10-1114, p. 6 (La.App. 1 Cir. 8/2/11), 76 So.3d 465, 469-70, *writ denied*, 11-2112 (La. 1/13/12), 77 So.3d 970; *Mor-Tem Risk Mgmt. Servs., Inc. v. Shore*, 43,169 (La.App. 2 Cir. 3/19/08), 978 So.2d 588.

In this case, Mr. Acosta argues that the trial court erred in imposing sanctions pursuant to La.Code Civ.P. art. 863. The crux of Mr. Acosta's argument is that the revocatory action was brought in good faith and was prompted by the sale of the assets of B&B, Inc., which rendered it insolvent and judgment proof in the reconventional demand asserted in Iberia Parish. He argues that because of R&T's failure to provide the necessary information relative to the sale, "he had no choice but to file to avoid potential prescription." Ultimately, Mr. Acosta concludes that "the suit was not frivolous, a reasonably objective inquiry was conducted prior to filing suit, and no sanctions should have been awarded to Defendant/Appellee, R&T." However, the trial court made it abundantly clear that the imposition of sanctions was grounded not in the filing of the revocatory action, but rather "in the continued pursuit of the litigation" after R&T supplied him with the relevant information.

6

The reasoning of the trial court is further evidenced in the transcript of the hearing on the Motion for Summary Judgment and for Sanctions which reads as follows:

[COUNSEL for Mr. Acosta]:

. . . .

Again, Your Honor, our whole reason for filing this action is, there's a reconventional demand in a New Iberia lawsuit that, if - - that we're trying to make sure that there are funds available to pay that, should the Court in New Iberia rule in our favor.

THE COURT: Well, no. I understand why you did it. But the point is, is that, just because you want to be sure you can collect on the judgment doesn't mean that you can just willy-nilly file suits and make claims.

. . . .

So, you know, the initial filing of the suit, maybe, I understand. But, then, we came to court. There was an exception that was granted. You were given time to amend. You went back and amended. You alleged some things that, obviously, you had no basis to allege in that suit.

And, you know, courts do use sanctions very sparingly, but this is not a situation where a suit was filed to protect prescription, and, then, when the facts were learned, it was dismissed. This is a suit -- And I'm not sure when it was filed, but it's been going on for some time.

Even assuming that Mr. Acosta lacked sufficient time to perform a proper investigation before instituting this action, after having done so, he failed to abide by the affirmative duties imposed by La.Code Civ.P. art. 863. Not only could the information on the sale of the assets have been procured in the Iberia Parish lawsuit, but, after having filed the revocatory action, Mr. Acosta needlessly continued to pursue this action. Notably, the original Petition for Revocation was filed in September of 2010, the First Amended Petition for Revocation followed in October of 2010, and a Second Supplemental and Amended Petition for Revocation was filed in December of 2010. Finally, Mr. Acosta received the

relevant discovery responses in February of 2011. In fact, as of July 25, 2011, the date of the hearing on the Motion for Summary Judgment and for Sanctions, counsel for Mr. Acosta was directly asked by the trial court, "[W]hat evidence do you have that this transaction renders this corporation insolvent or increased its insolvency?" Counsel for Mr. Acosta conceded, "[T]here is none." For the foregoing reasons, we find no manifest error in the trial court's imposition of sanctions for "the continued pursuit of the litigation[.]"

With respect to the amount of sanctions imposed, Mr. Acosta asserts on appeal that the award was an abuse of the trial court's discretion. Conversely, in its Answer to Appeal, R&T seeks "to have the trial court judgment amended to increase the amount of sanctions[.]" When determining the appropriateness of the amount of a sanction award, the jurisprudence instructs:

> A trial court has considerable discretion as to the type and severity of sanctions to be imposed, once it determines that sanctions are appropriate. *Alombro v. Alfortish*, [02-1081 (La.App. 5 Cir. 4/29/03), 845 So.2d 1162, *writ denied*, 03-1947 (La. 10/31/03), 857 So.2d 486]. The trial court must consider four factors to determine the appropriate sanction award: 1) what conduct is being punished or is sought to be deterred?; 2) what expenses or costs were caused by the violating rule?; 3) were the costs or expenses "reasonable" as opposed to self-imposed, mitigatable, or the result of a delay in seeking the intervention of the court?; and 4) was the sanction the least severe to achieve the purpose of the rule? *Id*. The goal to be served by imposing sanctions pursuant to [La.Code Civ.P.] art 863 is not wholesale fee shifting, but rather the correction of an abuse of litigation by the awarding of reasonable, not necessarily actual, attorney fees. *Id*.

*Thibodeaux v. Billiott*, 04-1308, p. 8 (La.App. 5 Cir. 3/1/05), 900 So.2d 110, 115; *Levert v. Martinez*, 06-11 (La.App. 5 Cir. 9/26/06), 939 So.2d 615, *writ denied*, 06-2807 (La. 1/26/07), 948 So.2d 174.

In the instant matter, the amount of the sanction award was calculated by the trial court after requesting post-hearing briefs from counsel of a timeline of events and documentation of the amounts of fees and expenses incurred. Therein, R&T

8

argued that it had produced all necessary documentation by February 15, 2011. In response, Mr. Acosta asserted that the pivotal date was May 5, 2011, when additional information was provided. Ultimately, the trial court agreed with R&T and made its calculation using February 15, 2011, as the operable date. It then rendered an award based upon the documentation relative to attorney fees and expenses incurred after that date. Although the trial court did not award R&T the actual total amounts of fees and expenses it incurred after February 15, 2011, considering the goal as explained in *Thibodeaux*, we find no abuse of discretion in the sanction award of $7,500.00 in attorney fees plus expenses of $65.04.

Finally, in its Answer to Appeal, R&T seeks damages for the filing of a frivolous appeal pursuant to La.Code Civ.P. art. 2164, which provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

In recently applying La.Code Civ.P. art. 2164, this court has stated the following:

> "Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact [or] law." *Johnson v. Johnson*, 08-60, p. 5 (La.App. 4 Cir. 5/28/08), 986 So.2d 797, 801, *writ not considered*, 08-1418 (La. 10/3/08), 992 So.2d 1001. Although we are mindful that La.Code Civ.P. art. 2164 must be strictly construed, "[f]rivolous appeal damages will be awarded if the appellant is trying to 'delay the action' or 'if the appealing counsel does not seriously believe the law he or she advocates.' *Hester v. Hester*, 97-2009, p. 5 (La.App. 4 Cir. 6/3/98), 715 So.2d 43, 46." *Johnson*, 986 So.2d at 801. Additionally, "[a]n appeal may also be deemed frivolous if it does not present a 'substantial legal question.' *Tillmon v. Thrasher Waterproofing*, 00-0395, p. 8 (La.App. 4 Cir. 3/28/01), 786 So.2d 131, 137." *Johnson*, 986 So.2d at 801.

*Bandaries v. Cassidy*, 11-1267, p. 7 (La.App. 3 Cir. 3/7/12), ___So.3d___, ___.

Considering the matter presently before us, including the record and arguments advanced herein, we find Mr. Acosta's appeal of the imposition of sanctions and the amount thereof fails to "present a 'substantial legal question.'" *Id*. Accordingly, we find that R&T is entitled to an award of damages for the filing of a frivolous appeal by Mr. Acosta.

## **DECREE**

We find no manifest error in the trial court's decision to award sanctions in favor of R&T Oilfield Services, Inc. f/k/a B&B Oilfield Services, Inc. Further, we find no abuse of the trial court's discretion in the amount of sanctions imposed; therefore, we affirm the trial court's judgment of $7,500.00 in attorney fees plus expenses of $65.04. Additionally, we render judgment herein in favor of R&T Oilfield Services, Inc. f/k/a B&B Oilfield Services, Inc. and against Wilson Acosta in the amount of $2,500.00 for the filing of a frivolous appeal by Mr. Acosta. All costs of these proceedings are assessed to Wilson Acosta.

**AFFIRMED AND RENDERED.**