# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-60


**BENJAMIN B. BLANCHET, ET AL.**

**VERSUS**

**HENRY ALBERT BOUDREAUX, JR., ET AL.**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 96178
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED AS AMENDED.**



**Franklin D. Beahm**
**Christopher G. Otten**
**Beahm & Green**
**145 Robert E. Lee Boulevard, Suite 408**
**New Orleans, LA 70124**
**(504) 288-2000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Henry Albert Boudreaux, Jr.**
    **HSB Design & Contractors, LLC**

Henry C. Perret, Jr
Jude C. David
Perret Doise L.L.C.
P. O. Box 53789
Lafayette, LA 70505
(337) 593-4900
COUNSEL FOR PLAINTIFFS/APPELLEES:
 Benjamin B. Blanchet
 Anne B. Blanchet

J. McCaleb Bilbro
The Javier Law Firm, LLC
1100 Poydras Street, Suite 2010
New Orleans, LA 70163
(504) 599-8570
COUNSEL FOR INTERVENOR/APPELLEE:
 J. McCaleb Bilbro

Gordon J. Schoeffler
Joseph Joy & Associates
P. O. Box 4929
Lafayette, LA 70502
(337) 232-8123
COUNSEL FOR DEFENDANT/APPELLANT:
 Henry Albert Boudreaux, Jr.

Sean P. Mount
Attorney at Law
1 Galleria Boulevard, Suite 1400
Metairie, LA 70001
(504) 836-6500
COUNSEL FOR DEFENDANT/APPELLEE:
 Accident Insurance Company

Sonya Boudreaux
614 Madison St.
Lafayette, LA 70501
PRO SE
 Sonya Boudreaux

Emmanuel Thibeaux
102 Jace St.
Carencro, LA 70520
PRO SE
 Emmanuel Thibeaux

**GREMILLION, Judge.**

The defendant, Henry Albert Boudreaux, Jr., appeals the trial court's judgment awarding the plaintiffs, Benjamin and Anne Blanchet, sanctions in the form of attorneys' fees and expenses. For the following reasons, we affirm as amended.

## FACTUAL AND PROCEDURAL BACKGROUND

The Blanchets hired Boudreaux as an architect and, later, contractor, for a million-dollar addition to their historic 1840s Acadian home located in Meaux, Louisiana. In September 2012, the Blanchets filed suit against Boudreaux for defective design and construction, breach of contract, and unjust enrichment. The underlying litigation is still pending in the trial court. In May 2014, the trial court awarded the Blanchets sanctions against Boudreaux comprised of $57,306.88 in attorneys' fees and $8,959.85 in expenses, for a total of $66,266.73. Boudreaux now appeals and assigns as error the award of attorneys' fees and expenses of $66,266.73. The Blanchets answer the appeal and request additional sanctions for frivolous appeal.

## DISCUSSION

Boudreaux's central argument is that the trial court's award of attorneys' fees and expenses as a sanction is based primarily on unauthorized admissions made by Boudreaux's former counsel in his answer to the Blanchets' petition. Boudreaux claims that the unauthorized admissions led to the summary judgment in favor of the Blanchets and resulted in the erroneous fee award. At the very least, Boudreaux claims, the award is excessive. We disagree.

Louisiana Code of Civil Procedure Article 863 authorizes the imposition of sanctions when pleadings have been made in violation of the article, i.e., for an

"improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." La.Code Civ.P. art. 863(B)(1). Appropriate sanctions include "an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees." La.Code Civ.P. art. 863(D). When the trial court imposes a sanction, it must describe the reasons for doing so. La.Code Civ.P. art. 863(G). We review the decision of a trial court to award sanctions using the manifest error/clearly wrong standard. *Acosta v. B & B Oilfield Servs., Inc.*, 12-122 (La.App. 3 Cir. 6/6/12), 91 So.3d 1263; *David v. David*, 14-657 (La.App. 3 Cir. 12/23/14), 156 So.3d 219, *writ denied*, 15-171 (La. 4/24/15), __ So.3d __. The trial court's determination of the type and amount of sanctions is reviewed using the abuse of discretion standard.

> A trial court has considerable discretion as to the type and severity of sanctions to be imposed, once it determines that sanctions are appropriate. The trial court must consider four factors to determine the appropriate sanction award: 1) what conduct is being punished or is sought to be deterred?; 2) what expenses or costs were caused by the violating rule?; 3) were the costs or expenses "reasonable" as opposed to self-imposed, mitigatable, or the result of a delay in seeking the intervention of the court?; and 4) was the sanction the least severe to achieve the purpose of the rule? The goal to be served by imposing sanctions pursuant to [La.Code Civ.P.] art. 863 is not wholesale fee shifting, but rather the correction of an abuse of litigation by the awarding of reasonable, not necessarily actual, attorney fees.

*Acosta*, 91 So.3d at 1269 (quoting *Thibodeaux v. Billiot*, 04-1308, p. 8 (La.App. 5 Cir. 3/1/05), 900 So.2d 110, 115) (citations omitted).

At the initial February 2014 hearing pertaining to the sanctions, the trial court found:

> I've got real questions about his credibility, as well, too. I mean – And I don't think anybody doesn't, that reads his deposition

2

and reads what's filed. I mean, there are all sorts of contradictions and inconsistencies.

. . . .

And, you know, whether he's intentionally doing it or whether he's got some, you know, horrible memory issue, I don't know what his issue is. But it certainly is concern – of concern to this Court that he is abusing the system by doing this.

. . . .

Let me hear from Mr. Best again. Mr. Best, I think Mr. Perret has made some good points about the fact that your client has certainly changed his position often. And it does appear, on the face, that he is attempting to manipulate the system by doing so. So let me hear you address that.

. . . .

[T]he Court certainly feels it's my responsibility to make sure that the system is not abused. And, in this case, I will say there was abuse.

At a hearing in November 2014 on several motions, the trial court provided further justification for the imposition of sanctions stating:

I mean, it's complicated. It involves lots of pleadings and lots of history of what happened here. . . . I did not impose those sanctions simply because they asked to amend their petition. I imposed it because of the circumstances and the history of this case and what had taken place prior to the request to amend[.]

Based on our review of the record, we find the trial court did not manifestly err in finding that sanctions were warranted against Boudreaux. The record is replete with evidence that Boudreaux purposely abused the legal process and misled the trial court to delay and extend the litigation as discussed below. We further find no abuse of discretion in the trial court's award of $66,266.73 in sanctions to the Blanchets, as this represents reasonable attorney fees and expenses for the amount of work performed.

3

*Evidence*

The Blanchets' September 2012 Petition for Damages and Declaratory Relief states in part:

12.

> The parties exchanged, but never executed, drafts of written agreements for the architectural and construction services. Orally, the parties agreed on the budget Boudreaux and HSB prepared for the Project. Petitioners agreed to pay Boudreaux the actual cost of the labor and materials incurred and, for his services as both architect and contractor, $200,000, with the opportunity to earn a $50,000 bonus if the Project were completed on time, and an additional $50,000 bonus if it were completed on budget. These payments for services were in addition to the hourly fees already paid Defendants.

13.

> In addition to the work that constitutes the Project, the parties anticipated that there would be additional work to the existing home. For that work, Defendants would be entitled to a fee of 12% of the actual, third-party costs of that additional work. Further, that additional work would not be considered in determining whether Defendants were entitled to bonuses based on meeting the agreed timeframe or budget.

The petition alleges defective design, negligent and defective construction, negligent supervision, breach of contract, unjust enrichment, and damages. In his answer and reconventional demand,[1] Boudreaux admitted the compensation agreement of $200,000.00 plus a $100,000.00 incentive-based compensation. Thereafter, the Blanchets noticed several records depositions. On February 4, 2013, Boudreaux filed a Motion & Order for Protective Orders. The Blanchets filed Affirmative Defenses and Reconventional Demand on February 13, 2013. In late February 2013, Boudreaux enrolled new counsel, James A. Prather and Lindsay L. Meador. In April 2013, Boudreaux again enrolled new counsel: Roger

---

[1] Boudreaux's attorneys at this time were Kyle L. Gideon and Theodore Glenn Edwards of the Davidson, Meaux, Sonnier, McElligot, Fontenot, Gideon & Edwards Firm.

4

A. Javier, J. McCaleb Bilbro, and Cassie E. Preston of The Javier Law Firm, LLC. Thereafter, on April 24, 2013, Boudreaux filed another Motion for Protective Order Or, Alternatively, to Quash.

On April 25, 2013, the Blanchets filed their First Amended and Restated Petition for Damages and Declaratory Relief. The Blanchets detailed the alleged misrepresentations by Boudreaux regarding hourly billing, billing for materials, billing for services, quality of materials, delivery, violations of duty as an architect, and the costs of errors and omissions insurance, which was never obtained, while reiterating their original claims.

On April 29, 2013, Boudreaux filed a Motion For Protective Order or, Alternatively, to Quash pertaining to a subpoena of his bank records from Iberia Bank Corporation, LLC. In the Blanchets' June 2014 Memorandum in opposition to Defendants' Motion For Protective Order Or, Alternatively, To Quash, they claimed the bank records were the only way to ascertain how much money Boudreaux defrauded them of after he admitted in his deposition that he defrauded them, misled them for financial profit, and marked up materials. Similarly, the Blanchets filed a Memorandum in Opposition to Motion for Protective Order claiming that Boudreaux should be required to produce his tax returns because Boudreaux claimed his arrangement with the Blanchets included reimbursement for all income taxes he paid on his fees.

Boudreaux's own deposition testimony, taken February 6, 2013, reveals numerous instances where he claims to have "mistakenly" billed for twenty or more hours of work in one day. He admitted to defrauding the Blanchets and to billing them $950,000.00 for his services.

5

Following a June 24, 2013 hearing, the trial court denied Boudreaux's protective order request pertaining to his tax returns and denied his request for protective order, in part, relating to records pertaining to his business checking account. IberiaBank was ordered to produce all financial documents relating to the business. On July 19, 2013, the Blanchets filed a Motion to Compel Boudreaux to produce discovery responses.

On July 19, 2013, the Blanchets filed a Motion for Partial Summary Judgment urging that there was no genuine issue of material fact regarding the terms of the contract. Those terms included that Boudreaux was entitled to receive the actual cost of the labor and materials incurred in the renovations of their home, $200,000.00, a $50,000.00 bonus if the project was completed on time, and an additional $50,000.00 bonus if the project was completed on budget. Additionally, Boudreaux would receive 12% of the amount by which actual costs of the project exceeded 1.3 million, but only if the increased costs resulted from preapproved change orders and not cost overruns, and 12% of the actual costs of additional work to the existing home that was beyond the scope of the project.

Also on July 19, 2013, the Blanchets filed a Motion for Partial Summary Judgment pertaining to item sixteen in their prayer for relief claiming there was no genuine issue that Boudreaux charged them $127,756.45 for insurance he never purchased (professional liability and errors and omissions insurance in the amount of $20,245.00). They also claimed that he charged them excessive amounts for other insurance (masonry general liability insurance in the amount of $17,521.10, other general liability insurance in the amount of $19,852.65, and $70,137.70 for workers' compensation insurance) that he did purchase.

6

On July 23, 2013, the Blanchets filed another Motion To Compel. On August 23, 2013, The Javier Law Firm, LLC filed a motion to withdraw from its representation of Boudreaux. Boudreaux retained new counsel from Beahm & Green, who are his current counsel. The Blanchets opposed the motion to withdraw if it would cause a delay in the September 23, 2013 hearing scheduled on the partial motions for summary judgment. The Blanchets detailed the numerous delays of depositions, discovery, scheduling and other important matters due to Boudreaux's repeated counsel changes.

On September 6, 2013, Boudreaux filed a motion to continue the September 23, 2013 hearing on the Blanchets' motions for partial summary judgment and to compel. The Blanchets opposed the motion. Boudreaux filed various motions in opposition to the Blanchets' motions for summary judgment.

Following the September 23, 2013 hearing, the trial court granted summary judgment in favor of the Blanchets regarding the insurance premium overcharge and the contractual agreement between the parties, stating in its reasons for ruling:

> In reviewing the record, the Court finds that Defendants admitted, in answering paragraph 12, that HSB Design & Contractors, LLC "ultimately became architect and general contractor for the subject work." In response to paragraph 14, Defendants admitted all allegations, without any qualification. That paragraph reads:
>
>> The parties all agreed that Petitioners would pay Boudreaux the actual cost of the labor and materials incurred and, for his services as both architect and contractor, $200,000, with the opportunity to earn a $50,000 bonus if it were completed on budget. These payments for services were in addition to the hourly fees that had already been paid to Defendants. The parties also agreed that Boudreaux would receive a 12% commission of budget increases for the project to the extent that the actual costs exceeded $1.3 million, but only if the increased costs resulted from pre-approved change orders and not from cost overruns.

In giving his deposition testimony, the sole non-entity Defendant, Henry Boudreaux, did not give any testimony to refute this admission, nor is there anything in the record to establish any controversy about the agreement. To the contrary, Mr. Boudreaux testified the terms of this agreement did not change, just the costs. While there may be dispute about whether the agreement was violated, the pleadings establish the terms of the agreement and the affidavit of Mr. Benjamin Blanchet also verifies this agreement. Therefore, the Court grants summary judgment in favor of Plaintiffs as to the terms of the contractual agreement between the parties for compensation to Defendants for architectural and contracting work[.]

In its judgment on the matter filed in November 2013, the trial court stated:

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** between September 2010 and March 25, 2011 Boudreaux was retained at a rate of $110 per hour to provide architectural and consulting services. The parties agreed Plaintiffs would pay Mr. Boudreaux one hundred and ten dollars and no cents ($110.00) per hour for any architectural and consulting services provided by Mr. Boudreaux for the Plaintiffs between September 2010, and March 25, 2011.

**IT IS FURTHER ORDERED; ADJUDGED AND DECREED** Plaintiffs retained Henry Boudreaux to provide architectural and general contracting services after March 25, 2011. Plaintiffs agreed to pay Mr. Boudreaux the following sums for work performed on the Blanchet residence:

1. The actual cost of labor and materials incurred; and

2. For services as both architect and general contractor:

   a. Two hundred thousand dollars and no cents ($200,000.00);

   b. A bonus of fifty thousand dollars and no cents ($50,000.00) if the project were completed on time;

   c. A bonus of fifty thousand dollars and no cents ($50,000.00) if the project were completed on budget; and

   d. A twelve percent (12%) fee of budget increases for the project to the extent that the actual costs exceeded one million, three hundred thousand dollars ($1,3000,000.00), but only if the increased actual costs resulted from pre-approved change orders and not from cost overruns.

Additionally, the trial court granted partial summary judgment pertaining to the Blanchets' overpayment for certain insurance premiums. The motion was partially granted in favor of the Blanchets in the amount of $20,245.00, but partially denied because a piece of evidence was not authenticated.

In October 2013, Boudreaux filed a motion to stay and alternatively, motion to quash depositions. Boudreaux requested that the trial court stay the litigation for at least 120 days because a federal criminal investigation had been instituted against Boudreaux, and his criminal counsel had not had enough time to review and investigate the matter. The subject matter of the federal criminal charges pertained to the same matter as the current civil litigation in that the United States government was investigating mail and wire fraud in connection with the overbilling in the Blanchet restoration. The trial court denied the motion. Boudreaux filed a motion for new trial pertaining to that ruling, which was denied by the trial court.

Also in October 2013, the Blanchets filed a motion to reinstate or reconsider their motion for partial summary judgment pertaining to the insurance premium payments. The Blanchets also filed a motion for partial summary judgment pertaining to the markups of subcontractor and vendor invoices, providing very detailed accounts of the amounts charged by numerous vendors versus the more than $572,000.00 markup charged by Boudreaux in contravention of the contract terms.

In November 2013, Boudreaux filed a motion for leave of court to file an amended and restated answer to the Blanchets' first amended and restated petition. Boudreaux requested the leave to:

. . . correct inaccurate admissions of fact made by prior Counsel for Defendants in Defendants' Answer to Plaintiffs' First Amended and Restated Petition for Damages and Declaratory Relief filed on or about July 11, 2013, in this matter. In support thereof, Defendants show the Answer to Plaintiffs' First Amended and Restated Petition for Damages and Declaratory Relief was filed by previous Counsel of record without consultation or approval by Defendants and contains admissions of fact in response to allegations which are inaccurate and untrue. Defendants respectfully suggest there is no valid reasons they should be held liable for judicial admissions of fact made by their attorneys without their knowledge or consent and, therefore, no valid reason for [sic] the Trial Court should deny the amendment.

The accompanying memorandum claimed that Boudreaux was unaware of the admissions of fact made by his previous counsel, that his previous counsel did not consult with him prior to filing the answer, and that the admissions of fact were untrue and inaccurate.

On November 27, 2013, the Blanchets filed motions for contempt, citing Henry Boudreaux and his wife, Sonya, for their willful failure to appear and testify for their validly noticed and subpoenaed depositions. Although their motions were denied at a December 2013 hearing, the Boudreauxs were ordered to promptly appear for their depositions.

On December 6, 2013, Boudreaux filed a motion for attorneys' fees and costs in the form of sanctions pertaining to the Blanchets' motion to take depositions of Roger A. Javier, J. McCaleb Bilbro, Franklin D. Beahm, Jacob K. Best, and Rebecca Wilmore. Bilbro filed a motion for protective order or, alternatively, to quash a subpoena duces tecum for deposition served upon him. Following a December 16, 2013 hearing, the trial court granted the motion for the subpoenas of Javier and Bilbro, but denied it as to the remaining attorneys. Bilbro and Javier filed a second motion for protective order, or alternatively to quash.

10

In January 2014, the Blanchets filed a memorandum in opposition to Boudreaux's leave of court to file an amended answer. The memorandum detailed the deposition testimony of Bilbro, who attested that Boudreaux knew what he was admitting to in his original answer, and that he and his client had reviewed the answer paragraph by paragraph. Attached were more than 130 pages of Bilbro's detailed invoices for work performed for Boudreaux, including drafting responses to the petition and various interrogatories.

Following a February 3, 2014 hearing, the trial court rendered judgment partially granting Boudreaux's motion for leave to amend. The trial court specifically noted that the Blanchets would be allowed to "use all evidence of Defendants' activities leading up to the retractions as evidence in the trial of this matter, including, without limitation, the deposition testimony of Roger Javier and J. McCaleb Bilbro." It thereafter held:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED**, Defendants are taxed with sanctions, including all costs and reasonable attorneys' fees incurred by Plaintiffs in proceeding based on the assumed validity of admissions made in Defendants' July 11, 2013, Answer to Plaintiffs' First Amended and Restated Petition for Damages and Declaratory Relief, including the bringing of the Motions for Partial Summary Judgment and all of the subsequent activity that was necessary following withdrawal of those admissions.

The Blanchets filed a Motion to Reconsider Defendants' Motion for Leave of Court to File Verified Supplemental, Amended and Restated Answer, essentially alleging Boudreaux's bad faith and fraud. The trial court denied the motion on April 17, 2014, and the Blanchets filed an application for supervisory writs with this court, which was denied on August 18, 2014.

11

Boudreaux filed his supplemental, amended and restated answer on April 25, 2014. On May 29, 2014, the trial court issued a Ruling and Judgment on imposition of Attorney Fee Sanction:

> The Court previously ruled, in permitting the Defendant, Henry Boudreaux, to amend his answer, that Mr. Boudreaux would be sanctioned with the award of attorney fees and expenses. This sanction is based upon the legal fees and expenses incurred by Plaintiff in reliance on those admissions by Plaintiff, which were subsequently retracted. The Court has reviewed the submission of counsel for both Plaintiff and Defendant in regard to those fees and expenses and considered the arguments of counsel advanced in those submissions as well as at the hearing conducted on May 12, 2014. The Court concludes the appropriate award of attorney fees is the amount of $57,306.88 plus expenses of $8,959.85 for a total award of $66,266.73. The attached spreadsheet reflects those requested fees which were disallowed and those which were reduced, as well as the hourly rates which were adjusted by the Court, to determine the reasonable fees incurred by Plaintiff as a result of the Defendant's admissions and subsequent recantation of same.

### Sanctions

In essence, Boudreaux is completely retracting his former admissions to what were essentially undisputed facts, i.e., the initial nature of the contract between the parties. His claims that his former counsel, Bilbro, answered the petition without his consent and in a way that was contrary to the truth, is a last-ditch attempt by Boudreaux to back-track and adopt a new strategy to avoid the obvious fraud he has perpetrated against the Blanchets. It is clear from the voluminous record that Boudreaux has used every tactic to avoid and delay the proceedings. Further, Boudreaux's own testimony leaves little doubt that he defrauded the Blanchets of hundreds of thousands of dollars. Although the merits of the fraud allegations are not before us, there is no manifest error in the trial court's findings that sanctions were warranted when reasonable people could easily conclude that Boudreaux is completely retracting his previous answer in an attempt

12

to reverse the results of nearly a year of litigation. Moreover, we find the fee award was not excessive considering the volume of work conducted for the Blanchets over this time.

*Frivolous Appeal*

In their brief,[2] the Blanchets request further sanctions against Boudreaux and for damages caused by frivolous appeal pursuant to La.Code Civ.P. art. 2164, which provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

Although an award for frivolous appeal is penal in nature and must be strictly construed, we find this case is ripe for the award of damages for frivolous appeal. *See State Farm Mutual Automobile Ins. Co. v. Callahan*, 571 So.2d 852 (La.App. 3 Cir. 1990)*, writ denied*, 576 So.2d 51 (La.1991). An award for damages for frivolous appeal is warranted "when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel does not seriously believe in the position he advocates." *Id.* at 854. Without a substantiated basis for doing so, claiming that a fellow attorney essentially fabricated his client's responses provided in the answer amounts to nothing more than a delay tactic, as there is no serious legal question that this argument has any basis in fact. It is a mere continuation of Boudreaux's ongoing

---

[2] Although awards for frivolous appeal have been denied for failing to answer the appeal, we are awarding damages for frivolous appeal for two reasons. First, the conduct of the appellant and his counsel is frivolous and, second, we find that the appellee's briefing evidences a demand for penalties. For further discussion on the necessity of an answer as a precursor to an award for frivolous appeal, see the recently published "*Sanctions for Frivolous Civil Appeals: Sincerely . . . After 50 Years, Should the Standard Change?*" Gail S. Stephenson, 75 La.B.J. 4 (2015).

13

plot to avoid the legal repercussions of his actions. For these reasons, we award damages for frivolous appeal in the amount of $10,000.00 for work performed on appeal. We assess appellate counsel with $2,500.00 of the sanctions and Boudreaux with the remaining $7,500.00.

## CONCLUSION

The judgment of the trial court awarding sanctions in the amount of $66,266.73 in favor of the plaintiffs, Benjamin and Anne Blanchet, is affirmed. We further award damages for frivolous appeal in the amount of $10,000.00. All costs of this appeal are assessed against the defendant, Henry Albert Boudreaux, Jr.

**AFFIRMED AS AMENDED.**