720 So.2d 408 (1998)
Conellia Ann PARKER, Plaintiff,
v.
PROGRESSIVE INSURANCE CO., Defendant-Appellee.
No. 31,147-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*409 Murphy J. White & Associates by Murphy J. White, Mansfield, for Appellant Murphy J. White.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for Appellee.
Before MARVIN, C.J., and BROWN & PEATROSS, JJ.
PEATROSS, J.
Attorney Murphy J. White ("White") appeals a trial court judgment ordering him to pay $5,000 plus legal interest in sanctions. In the reasons for judgment, the trial court found the imposition of sanctions against White to be proper because White should have been aware that his client Conellia Parker ("Parker") was attempting to commit a fraud on the court by "manufacturing" an accident and falsely alleging related personal injuries. For the following reasons, we affirm the judgment of the trial court.

FACTS
On February 18, 1994, White filed suit on behalf of Parker seeking personal injury damages. The petition asserted that Parker was injured on June 4, 1993, when she was struck and knocked down by the open door of a rearward moving vehicle driven by her brother James Williams ("Williams"). Named as defendants in the suit were Williams and his insurer Progressive Insurance Company ("Progressive").
On March 23, 1994, Progressive submitted interrogatories to Parker. Subsequently, Parker submitted her answers to interrogatories, signed by White, in which she denied any medical treatment during the past ten years for any injuries other than the injuries sustained in the accident referred to in her petition. On June 13, 1994, Parker's deposition *410 was taken with White present. Parker responded in the negative to questions regarding whether she had ever filed any other lawsuits, been involved in any type of accident or sustained any other type of injuries whatsoever. In response to the specific question whether she had been injured in any way since the June 4, 1993 accident, Parker also answered in the negative. She further disclaimed knowledge of any accidents similar to this accident and disavowed ever hearing of anyone being injured or being struck by a car door.
On July 7, 1994, Williams was deposed in connection with the instant case. White was present at the deposition. In his deposition, Williams denied ever having been represented by White and having been involved in any other accidents "whatsoever." In response to the specific question whether he had been involved in any accident similar to the one at issue, Williams responded in the negative.
Evidence introduced by Progressive at trial, however, indicated Parker's interrogatory and deposition answers were not completely accurate. Parker had received treatment for prior back injuries and received prescriptions for pain medication for back pain since 1992. Also, on April 15, 1994, Parker had fallen at Schumpert Medical Center ("Schumpert"), giving rise to treatment at Schumpert. In December 1994, White filed suit on behalf of Parker against Schumpert for injuries sustained in the fall. White did not, however, supplement or amend answers to discovery requests in the instant action to reveal Parker's other injuries or medical treatment. Additionally, as more fully explained below, evidence presented at trial suggested that Parker had knowledge of previous similar accidents.
Williams' deposition testimony also contained a number of inaccuracies. Progressive presented the testimony of a Shelter Insurance claims representative who testified that Williams filed a claim with Shelter Insurance for injuries he received on approximately April 13, 1992. The injuries allegedly occurred when Williams was hit by the open door of a rearward moving vehicle driven by his son-in-law. The Shelter representative testified that White had represented Williams in the claim. Progressive presented further testimony indicating that, in addition to the April 1992 incident and the accident in the instant case, Williams filed two other open-door, rearward-moving vehicle claims involving family members in 1992. In one of these cases, the alleged driver was Parker's son; in the other instance, a first cousin of Parker and Williams was alleged to have been driving.
After trial, a jury rejected Parker's claims and Progressive filed a motion for imposition of sanctions against White and his client. In support of its motion, Progressive asserted that, under oath, Parker had intentionally misrepresented facts and that she had pursued a fraudulent claim. Progressive further argued that White had submitted Parker's discovery responses inconsistent with facts and the inconsistencies were known or should have been known to White. Progressive also contended that White did not correct the record when Parker and Williams, at their respective depositions, gave testimony known to White to be false.
The trial court agreed with Progressive's arguments. Finding Parker's claims to be fraudulent, the trial court granted the motion for sanctions and ordered Parker to pay sanctions in the amount of $5,000, court costs in the amount of $8,059.18, attorney fees in the amount of $15,092 and legal interest from date of judicial demand. Parker did not appeal. The trial court further found that White failed to make a "reasonable inquiry" before filing this lawsuit and that White should have been aware that Parker was attempting to commit a fraud on the court. The trial court therefore ordered White to pay the amount of $5,000 in sanctions plus legal interest from the date of judicial demand. White appeals.

DISCUSSION
In order to impose sanctions, a trial court must first find that one of the affirmative duties imposed by La. C.C.P. Art. 863(B) has been violated: the attorney must certify that he has read the pleading; that to the best of the attorney's knowledge, information and belief formed after reasonable inquiry, the pleading is well-grounded in fact; that the *411 pleading is warranted by existing law or good faith argument for the extension, modification or reversal of existing law; and that the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Joyner v. Wear, 27,631 (La. App.2d Cir.12/6/95), 665 So.2d 634; Morehouse Parish Hospital Service District v. Pettit, 25,396 (La.App.2d Cir.1/19/94), 630 So.2d 1338, writ denied, 94-0449 (La.4/7/94), 635 So.2d 1135.
Thus, the obligation imposed upon litigants and their counsel who sign a pleading is to make an objectively reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable inquiry. Joyner, supra; Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La. App. 2d Cir.1990); Penton v. Clarkson, 93-0657 (La.App. 1st Cir.3/11/94), 633 So.2d 918.
Among the factors to be considered in determining whether reasonable factual inquiry has been made are: (1) the time available to the signer for investigation; (2) the extent of the attorney's reliance on his client for the factual support for the document; (3) the feasibility of a prefiling investigation; (4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; (5) the complexity of the factual and legal issues; and (6) the extent to which development of the factual circumstances underlying the claim requires discovery. Joyner, supra; Diesel Driving Academy, Inc., supra.
When examining a sanctions award, the court of appeal will review the trial court's factual determination that La. C.C.P. art. 863 has been violated under the manifest error or clearly wrong standard of review. The determination of the type and amount of the sanction is reviewed under the abuse of discretion standard of review. Joyner, supra; Matter of Succession of Thomas, 602 So.2d 1108 (La.App. 1st Cir.1992); Morehouse Parish Hospital Service District v. Pettit, supra.
In the present case, the trial court stated in its reasons for judgment:
Considering the facts as a whole, it is clear that Murphy J. White failed to make `reasonable inquiry' before filing this lawsuit. Mr. White had ample time to investigate this matter. The plaintiff consulted him shortly after the date of the alleged incident. In fact, she saw him before she even saw a doctor. Further, Mr. White previously represented her brother in a claim with almost identical facts. A reasonable inquiry would have revealed the facts surrounding claims made by Mr. Williams and involving other family members. Mr. White knew Mr. Williams lied at his deposition and yet he continued to pursue this claim. Mr. White knew his client lied at her deposition yet he continued to pursue this claim. He took no steps to correct information given under oath by these individuals which he had to know was false since he had been involved with claims they denied as to other accidents and injuries.
The trial court concluded that White failed to make a reasonable inquiry as stated under La. C.C.P. art. 863. The trial court was not clearly wrong in its conclusion and for the same reasons stated by the trial court, we conclude that sanctions were proper. White has made an argument that sanctions under La. C.C.P. art. 863 are not proper for matters related to interrogatories and discovery. As shown in the trial court's reasons for judgment, the sanctions were imposed for failure to make reasonable inquiry. The trial court may have considered the inconsistencies surrounding the answers to the interrogatories, but this does not show that it was clearly wrong in ordering sanctions.[1]
In his final argument, White contends that sanctions should not be imposed merely to punish him. He claims that, because his client was ordered to pay the court costs and the defendant's attorney fees, the fine he was ordered to pay will not apply to any actual cost. White points to the case of Williams v. Tulane University Medical Center, 588 So.2d 782 (La.App. 4th Cir.1991), wherein that court set aside the sanction of writing 50 *412 times the provisions of La. C.C.P. art. 863 and stated:
We consider such a penalty not only demeaning, but also pointless. A penalty should be tailored not only to punish the violator, but also to accomplish some useful end.
The goal to be served by imposing sanctions is not wholesale fee shifting, but correction of litigation abuse. Joyner, supra. La. C.C.P. art. 863 states, in pertinent part:
... the court shall impose ... an appropriate sanction which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. (Emphasis ours.)
We conclude that the sanction in the present case is not demeaning and pointless for an attorney who is an officer of the court. White has a duty before filing suit to conduct a reasonable inquiry into the allegations made by his client and, in the present case, he failed to fulfill this duty. Monetary sanctions were proper in this case.[2]

CONCLUSION
For the above reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] We note that La. C.C.P. art. 1420 does allow for sanctions in matters related to discovery.
[2] White did not appeal the amount of the sanction imposed.