LOLLEY, J.
| ¶ Mor-Tem Risk Management Services, Inc. (“Mor-Tem”) appeals two judgments by the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, in favor of Michael Shore, which judgments granted Shore’s motion for summary judgment/motion for sanctions, respectively. For the following reasons, we affirm the trial court’s judgments.
Facts
Mor-Tem is an insurance adjusting company and third party administrator for workers’ compensation claims. Michael Shore was Mor-Tem’s claims manager in its Monroe, Louisiana office. On June 28, 2004, Mor-Tem terminated Shore’s employment, and afterward, several of Mor-Tem’s clients hired Shore to handle their insurance claims.
Subsequently, Mor-Tem filed suit against Shore, claiming that he had intentionally interfered with Mor-Tem’s contracts with its clients. Additionally, Mor-Tem claimed that Shore had taken property, primarily a table, from the building where the business had been located, and it sought damages for wrongful conversion of property. Shore answered and subsequently filed a motion for summary judgment in connection with the two claims. The trial court partially granted his motion and dismissed the intentional interference with contracts claim — that judgment is not the subject of this appeal. However, the trial court denied the summary judgment in connection with the conversion claim. Later, Shore filed a Motion for Summary Judgment/Motion for Sanctions, arguing that Mor-Tem was unable to present any evidence in support of its conversion claim. After the trial court’s refusal to allow Mor-Tem’s affidavit in support of its | ¡«opposition to the motion, the trial court granted Shore’s motion for summary judgment and dismissed Mor-Tem’s claims against Shore. As to Shore’s motion for sanctions, Mor-Tem was ordered to pay Shore’s “reasonable attorneys fees” in the amount of $10,500.00 plus the costs of the proceedings. Two separate judgments were entered, and those are the subject of Mor-Tem’s appeal.
Discussion
On appeal, Mor-Tem raises four assignments of error, the first two of which are related. First, Mor-Tem argues that the trial court erred in refusing to allow its filing of an affidavit in opposition to Shore’s motion for summary judgment. Second, Mor-Tem maintains that the trial court erred in granting Shore’s motion for summary judgment, because, based on the opposing affidavit, genuine issues of material fact existed. We disagree with both assertions.
*591 Here, according to Mor-Tem, the following events occurred in relation to the subject affidavit:
• April 2, 2007: Mor-Tem filed an opposition to Shore’s motion for summary judgment, claiming to have attached the unsigned, un-notarized affidavit of Vanessa James. The hearing on Shore’s motion for summary judgment was scheduled for April 12, 2007;
• April 4, 2007: Mor-Tem supplied Shore’s attorney with a fax copy of James’ signed and notarized affidavit; and,
• April 9, 2007: Mor-Tem filed a motion to substitute the unsigned affidavit with the signed affidavit, which motion was denied by the trial court with a notation by the trial court that there was no affidavit in the record.
IsNotably, at the hearing on Mor-Tem’s motion for new trial, the trial court described the proceedings surrounding the affidavit as follows:
Now the affidavit of Vanessa James was not submitted with the original motion for summary judgment in opposition. It was not in your opposition. It was not submitted. It wasn’t presented to the Court until the day of the hearing and then it wasn’t even notarized.
Mor-Tem argues that the affidavit attests to matters at the heart of the proceedings and justice was not served without its consideration. Mor-Tem states that the trial court’s refusal to consider the affidavit was a “hyper-technical” application of the rule and such application is contrary to the liberal construction mandated by La. C.C.P. art. 5051, which states that “The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.”
Pursuant to La. C.C.P. art. 966 B, “[t]he adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least eight days prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary.” Here, the trial court was within its discretion to not allow the untimely filing of the affidavit. We do not consider it “hyper-technical” for the trial court to strictly adhere to the article. As noted by the trial court, it does not appear that the unverified version of the affidavit was filed with Mor-Tem’s opposition memorandum, despite Mor-Tem’s contention otherwise. It appears that the affidavit was presented to the trial court at' the hearing on |4the motion for summary judgment and then only became part of the record as a filing when Mor-Tem later filed its motion for new trial after the trial court granted Shore’s motion for summary judgment.
However, although the trial court did not allow the late-filing of the affidavit, it is clear from the oral reasons for judgment, that the affidavit was considered to some extent, even if it was insufficient to change the trial court’s ruling. Likewise, in our de novo review of the record, even considering the contents of the affidavit, we cannot see how it serves to benefit Mor-Tem’s opposition to Shore’s motion for summary judgment. That is, we fail to see any evidentiary value to the affidavit in favor of Mor-Tem.
In her affidavit, James averred that she was employed by Hammerman & Gainer, which had purchased Mor-Tem in 2002. According to James, the corresponding purchase agreement purportedly stated that Mor-Tem was in possession of certain items, and that Hammerman & Gainer became the owner of those items *592 by virtue of its purchase of Mor-Tem. However, Shore testified in his deposition that the table, which is the subject of the conversion lawsuit and the motion for summary judgment, was owned by him prior to Mor-Tem purchasing his business. Notably, the building in which Mor-Tem conducted its business belonged to Shore, and Mor-Tem leased it from Shore. There is nothing in the record, including James’ affidavit, establishing conclusively that Mor-Tem ever owned the table in question, because the affidavit only considers the purchase of the business by Hammer-man & Gainer-there is no evidence that Mor-Tem purchased the | stable and other items from Shore when it originally purchased his business. This is the missing link. Even considering James’ affidavit, we cannot say that Mor-Tem ever established that it was the owner of the table or any other specific items that it claimed Shore had converted. Mor-Tem was unable to provide any evidence of ownership of any of the movables it claims that he wrongfully converted. In light of Mor-Tem’s failure to provide any documentation that it ever owned the items in question, and Shore’s assertion that he indeed owned it, the trial court properly granted motion for summary judgment in his favor. Thus, the trial court was not in error in granting Shore’s motion for summary judgment notwithstanding the affidavit.
Mor-Tem’s last two assignments of error are related to the award of sanctions. In his motion for sanctions, Shore asserted entitlement to sanctions because Mor-Tem had filed a petition against him which was not warranted by the law or the facts. As stated, the trial court granted the motion and awarded Shore $10,500.00 in attorney fees and all costs of the proceeding. On appeal, Mor-Tem argues that the trial court erred in granting the motion for sanctions, and, in the alternative, that the award was excessive.
Louisiana C.C.P. art. 863 provides, in part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to | ficause unnecessary delay or needless increase in the cost of litigation.
⅝ ⅝ ⅜ ⅝
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney’s fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
Appellate review of the decision to impose sanctions is under the manifest error/clearly wrong standard of review. Jones v. Bethard, 39,575 (La.App.2d Cir.04/13/05), 900 So.2d 1081, writ denied, 2005-1519 (La.12/16/05), 917 So.2d 1115; *593 Parker v. Progressive Ins. Co., 31,147 (La.App.2d Cir.10/28/98), 720 So.2d 408. The determination of the type and amount of the sanction is reviewed under the abuse of discretion standard of review. Id.
Article 863 is intended only for exceptional circumstances and is not to be used simply because parties disagree as to the correct resolution of a legal matter. Caldwell v. Griggs, 40,838 (La.App.2d Cir.03/08/06), 924 So.2d 464. The slightest justification for the exercise of a legal right precludes sanctions. Only when the evidence is clear that there is no justification for the legal right exercised should sanctions be considered. Any lesser standard would serve to seriously impair the rights of the party as a litigant. Id. The obligation imposed upon litigants and their counsel who|7sign a pleading is to make an objectively reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable inquiry. Miller v. Miller, 35,358 (La.App.2d Cir.12/05/01), 803 So.2d 292.
Here, the trial court’s award of sanctions was based primarily on Mor-Tem’s claim of intentional interference with a contract against Shore. As stated by the trial court, despite Mor-Tem’s argument that it had a justifiable claim against Shore, this claim was without any merit and “caused a needless additional expenditure of resources by both parties.” We agree.
The cause of action for intentional inference with a contract has been very limited in its application. In 9 to 5 Fashions Inc. v. Spurney, 538 So.2d 228 (La.1989), the Louisiana Supreme Court recognized a narrowly defined cause of action for the breach of duty by a corporate officer to refrain from intentionally and unjustifiably interfering with a contractual relationship between the officer’s corporate employer and the particular plaintiff. The 9 to 5 Fashions court defined the elements which must be established to sustain a claim for intentional interference with a contract, those being:
1) a contract or legally protected interest must exist between the plaintiff and the corporate defendant;
2) the corporate actor must know of the contract;
3) the officer must intentionally induce or cause the corporation to breach the contract;
4) there must be an absence of justification on the. part of the corporate actor; and
|s5) the breach of contract must cause damages to plaintiff.
This court has limited the application of 9 to 5 Fashions, supra, to its facts. Healthcare Management Services, Inc. v. Vantage Healthplan, Inc., 32,523 (La.App.2d Cir.12/08/99), 748 So.2d 580. Here, considering the facts at hand, there was a complete misapplication of the 9 to 5 Fashions legal tenet. First, although Mor-Tem argues that Shore was like an officer, he was not. Shore was only an employee. Moreover, considering how narrowly this cause of action must be construed, we cannot see any justification in bringing it against Shore. The legal theory allowed under 9 to 5 Fashions envisions a scenario where the corporate officer (again, a position which Shore did not hold), acting on behalf of his corporation induces it to breach a contract with a third person (i.e. “the corporate defendant”). The facts of this case do not meet those required elements. Even if the facts of this case aligned with the narrow cause of action attempted here, Mor-Tem was never able to conclusively provide solid facts, let alone evidence, to indicate specific contracts Shore caused to be breached. Nor could Mor-Tem provide any evidence to support any of the other *594 necessary factors under 9 to 5 Fashions, yet, Mor-Tem continued to pursue its claim against Shore until the trial court dismissed the claim. Finally, Shore stated in his deposition that he never made contact with any of the clients until after his termination from Mor-Tem, yet Mor-Tem continued to pursue the claim against him.
Additionally, and as discussed herein, neither did the conversion claim have merit, considering that Mor-Tem in no way could prove its [¡¡ownership of the table. After Shore testified in his deposition that he owned the table, it was incumbent upon Mor-Tem to prove that it owned the table by virtue of its purchase of Shore’s business — this was never done. We question why Mor-Tem never produced evidence of its actual ownership of the table from the beginning of the litigation. Apparently, Mor-Tem did not have that proof, yet it continued to pursue a meritless claim against Shore.
When we consider that Mor-Tem’s claims were not supported by the law or the facts, we cannot help but conclude that they were pursued against Shore as retribution for his later conducting business with former Mor-Tem clients. Its claims were not simply weak — there was no color-able action against Shore.[1] Had the claims been simply weak, an imposition of sanctions would have been erroneous; however, considering that Mor-Tem’s action against Short was not even arguably supported by the law or the evidence, we see no abuse of discretion.
Further, we note that the ill motives of Mor-Tem in bringing suit against Shore is further evidenced in the unprofessional action of noticing Shore’s deposition eight days following the filing of the petition— before his time delay to answer the petition had run.[2] Mor-Tem sought to take Shore’s deposition in New Orleans, despite the fact that the lawsuit was filed in Monroe, Shore was located in Monroe, and the involved attorneys were involved in north Louisiana (Monroe and Shreveport, precisely). Even though we are not aware of any procedural rule preventing such a legal |inmaneuver, we cannot help but question the professionalism of such a tactic. Such appears to support Shore’s contention that Mor-Tem’s lawsuit was primarily intended to harass him for doing business with former Mor-Tem clients.
Finally, we cannot help but consider that during the course of this litigation the trial court was in the best position to observe the proceedings and regard the tenor of same. In this case, from simply reading the cold record, it is apparent that the trial court considered Mor-Tem’s claims against Shore as frivolous. Thus, considering the totality of the record before us, we cannot say that the trial court abused its discretion in imposing sanctions against Mor-Tem.
In calculating the amount of sanctions, the trial court awarded Shore his reasonable attorney fees in the amount of $10,500.00 (70 hours of legal work at the rate of $150.00 per hour). Although on its face that amount appears to be high, we note that this litigation commenced in November 2004. It addressed two separate legal claims, each of which Shore ultimately moved to have dismissed through summary judgment — these motions involved court appearances. From the very outset of the litigation, Shore’s attorney had to take immediate action. Not only did *595 Shore’s attorney have to address the petition for the preparation of an answer, he had to file a motion for protective order regarding Shore’s deposition that had been unilaterally scheduled by Mor-Tem’s trial counsel in New Orleans. The parties also conducted other discovery, and Shore’s attorney had to |17move to compel Mor-Tem to respond to his discovery request.[3] Thus, considering the amount of legal work it took to defend a claim that was ultimately only over a table, we do not see an abuse of discretion by the trial court regarding the amount of the award.
Conclusion
For the foregoing reasons, the judgments in favor of Michael Shore and against Mor-Tem Risk Management Services, Inc. are hereby affirmed. All costs of these proceedings are assessed to Mor-Tem.
AFFIRMED.

. Obviously Mor-Tem did not require Shore to execute a non-compete agreement, which feasibly could have prevented exactly the scenario that occurred.

. Mor-Tem had requested an expedited trial setting and only a ten day time limit for Shore's answer.

. We note, additionally, that following the award of sanctions, Mor-Tem then filed a motion for new trial, although no new evidence existed, which necessitated further preparation by Shore's legal counsel and attendance at a court hearing. Finally, Mor-Tem appealed the dismissal of the conversion claim regarding the conference table, which resulted in additional legal fees to Shore.