# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-804


JOSEPH NEIL BOUDREAUX

VERSUS

AMY GAIL MARIE BOUDREAUX


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-0650
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Ledricka J. Thierry, Judges.


**REVERSED IN PART;**
**AFFIRMED IN PART.**

**Erin N. Abrams**
**Bailey E. Anderson**
**The Johnson Firm**
**1400 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-1414**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Joseph Neil Boudreaux**

**John L. Fourcade, III**
**James E. Sudduth, III**
**Sudduth And Associates, LLC**
**1109 Pithon Street**
**Lake Charles, LA 70601**
**(337) 480-0101**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Amy Gail Marie Boudreaux**

**Dustan J. Abshire**
**Abshire Law Firm, LLC**
**334 Kirby Street**
**Lake Charles, LA 70601**
**(337) 419-2024**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Amy Gail Marie Boudreaux**

**SAVOIE, Judge.**

Amy Gail Marie Boudreaux, now Carpenter (Ms. Carpenter), appeals a judgment that found her in contempt of court for failing to reimburse her former husband, Joseph Neil Boudreaux (Mr. Boudreaux), for private school tuition paid on behalf of the parties' minor child, and further found her liable for sanctions for filing frivolous pleadings. She also appeals the denial of her contempt motion filed against Mr. Boudreaux.

For the reasons stated herein, we reverse the judgment to the extent it found Ms. Carpenter in contempt and her filings sanctionable, ordered Ms. Carpenter to reimburse Mr. Boudreaux for private school tuition and pay costs and attorney fees, and rendered a suspended sentence. We otherwise affirm the denial of Ms. Carpenter's contempt motion against Mr. Boudreaux.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties herein were married in March 2013, and they have one child, who was born in August 2013. They were divorced by judgment dated May 9, 2016, and since then they have been involved in continuous litigation with each other, with the trial court describing their inability to communicate for purposes of raising their child as "caustic." While the record in this case is voluminous, only the pleadings relevant to this appeal are discussed.

Following a custody trial in January 2018, the parties stipulated to a judgment and joint custody plan that awarded them with joint custody of the child, established Ms. Carpenter as the domiciliary parent, and gave Mr. Boudreaux access to the child pursuant to a phased-in schedule that contemplated fifty-fifty shared physical custody beginning the summer of 2020. The stipulated judgment also ordered the parties to utilize a parent facilitator to assist in the implementation of the custody

plan, ordered Mr. Boudreaux to meet with the child's counselor, Ray Melerine, and ordered Mr. Boudreaux to pay monthly child support. The joint custody plan also included the following provisions relevant to these proceedings:

**A. DOMICILIARY STATUS AND VISITATION:**

1. The primary domicile shall be at the residence of [Ms. Carpenter] who is designated as the domiciliary parent, subject to the following specific provisions:

   a. The minor child shall attend Life Christian Academy . . . beginning with Kindergarten in the fall of 2018. The parties will enroll the minor child once open enrollment begins. After the child completes Kindergarten, the parties will meet to amicably discuss where the child will attend First Grade and beyond. If the child is doing or did well at Life Christian Academy in Kindergarten, the agreement is to have the minor child continue his education at Life Christian Academy. If the child did not do well at Life Christian Academy in Kindergarten, then Dr. Patricia Post, Ray Melerine, and the Parent Coordinator will be consulted with to aid in the selection of the new school.

      i. Amy will pay 100% of the tuition and fees due Life Christian Academy associated with the minor child's attendance there.

      ii. . . . .

      iii. Both parties shall also be made aware of, and allowed to attend, any and all school events, teacher conferences and extracurricular activities. Both parents shall share all information related to the [minor child's] grades and academic performance with the other parent.

   . . . .

5. Right of First Refusal: If for any reason either parent must be away or work overnight while having custody of the child, the other parent is to be allowed the opportunity to keep the child before any other arrangements for care with a non-parent are made.

On September 18, 2018, Mr. Boudreaux filed a Motion to Incorporate Recommendations of Appointed Advisors, wherein he asked the trial court to, *inter alia*, implement the parent facilitator's August 31, 2018 recommendation that the minor child be enrolled in public school. The motion alleged that the child was not

2

successfully enrolled at Life Christian Academy as required by the 2018 joint custody plan, and that on August 7, 2018, Ms. Carpenter informed Mr. Boudreaux that she had enrolled the child in pre-school at Trinity Baptist School in April 2018, without previously consulting with Mr. Boudreaux or the parent facilitator.

On March 4, 2019, the trial court held a hearing on Mr. Boudreaux's motion, as well as on a motion filed by Ms. Carpenter to terminate the utilization of a parent facilitator. A judgment was rendered on April 11, 2019, denying Mr. Boudreaux's request to enroll the child in public school for the 2018-2019 school year, ordering the child to continue school at Trinity Baptist through the end of the academic year, and ordering the child to enroll, "if possible," in Life Christian Academy for kindergarten beginning in the fall of 2019. The judgment further denied Ms. Carpenter's motion to terminate the parent facilitator.

On June 27, 2019, Mr. Boudreaux filed a motion for contempt, alleging that Ms. Carpenter violated the April 2019 judgment by again enrolling the child in school without informing or discussing with Mr. Boudreaux an alternative placement to Life Christian Academy and by failing to cooperate with the parent facilitator. Following a hearing on September 9, 2019, the parties stipulated to a judgment that held Ms. Carpenter in contempt of the April 2019 judgment and sentenced her to ten days in the parish jail, with the sentence suspended upon the condition that Ms. Carpenter comply with all future orders of the court. A status conference to determine whether the parties should continue with a parent facilitator was also set for December 17, 2019.[1]

_____

[1] Kendall LeJeune was terminated as the parties' parent facilitator pursuant to a judgment signed July 26, 2019, after Mr. LeJeune filed an open account lawsuit against Ms. Carpenter for past-due amounts owed for his services.

Following various motions pertaining to modifications in child support after a change in Mr. Boudreaux's employment status, the hearing officer issued recommendations on August 11, 2020, finding that Mr. Boudreaux should pay $144.00 per month in child support, effective May 26, 2020. In addition, the hearing officer's written findings of fact stated:

> Mother's request to include private school tuition is denied. See Stipulated Judgment dated 1/31/18 wherein Mother is responsible for 100% of the costs of the child attending Life Christian Academy. The child no longer attends Life Christian Academy but her requests [sic] is nevertheless denied. See prior orders which do not include private school in the calculation of child support or assess any portion of the private school expenses to Father. This has been an on-going issue between the parties and Mother's request for Father to be assessed a portion of said expense; all of which has been denied by the court.

Ms. Carpenter appealed the hearing officer's recommendations to the trial court; however, her appeal was subsequently dismissed for lack of prosecution.

On September 25, 2020, Mr. Boudreaux filed a motion for contempt, wherein he alleged that Ms. Carpenter was in contempt of the January 2018 stipulated judgment and custody plan that provided him with "year round 50/50 physical custody" of the child. He alleged that following Hurricane Laura in August 2020, Ms. Carpenter evacuated with the child to Houston and then later informed him that she would be staying in Lafayette with the child until they returned home. According to Mr. Boudreaux's motion, Ms. Carpenter denied his request to resume 50/50 custody on September 21, 2020, and thereafter refused to allow him any access to the child.

A trial was held March 1 and March 2, 2021. According to the minutes, Ms. Carpenter appeared pro se at trial. A judgment was filed March 29, 2021, finding Ms. Carpenter in contempt and sentencing her to twenty days of incarceration, to run consecutively with the prior ten-day sentence, but with the sentence suspended

4

provided that Ms. Carpenter pay court costs and $2,304.00 in attorney fees by June 1, 2021. The judgment also ordered Ms. Carpenter to enroll in a parenting class and enroll in parent facilitation with Keri McCorcodale.

In addition, the March 2021 judgment named Mr. Boudreaux as the interim domiciliary parent from March 8, 2021, through July 31, 2021, with Ms. Carpenter having access every other weekend. The judgment also stated that Mr. Boudreaux "shall immediately enroll the child in Hamilton Christian Academy, the school the minor child attended heretofore." Beginning August 1, 2021, the parties were to revert to shared custody with 50/50 access contemplated by the January 2018 stipulated judgment.

On March 31, 2021, Ms. Carpenter, through counsel, filed a Motion for New Trial. The motion was subsequently denied September 21, 2021, according to the trial court's minutes.

Ms. Carpenter also filed a motion for contempt on June 7, 2021, alleging, *inter alia*, that Mr. Boudreaux failed to notify her of the child's wellbeing, that Mr. Boudreaux limited or cut off the child's telephone conversations with Ms. Carpenter, and that Mr. Boudreaux denied Ms. Carpenter the right of first refusal on various dates in May 2021 in violation of the January 2018 stipulated judgment.

On June 21, 2021, Mr. Boudreaux filed a motion for contempt against Ms. Carpenter alleging, *inter alia*, that Ms. Carpenter failed to reimburse him for tuition and expenses he incurred at Hamilton Christian Academy, despite the hearing officer's refusal to grant Ms. Carpenter's request to include private school tuition in the child support calculation in August 2020.

On August 31, 2021, Ms. Erin Abrams was substituted as counsel for Mr. Boudreaux. Ms. Carpenter thereafter filed a motion to disqualify Ms. Abrams on

5

September 17, 2021, due to alleged conflicts of interest involving Ms. Abrams' firm. The motion was subsequently denied.

Prior to the denial of Ms. Carpenter's motions for new trial and disqualification of counsel, Mr. Boudreaux filed a Motion for Sanctions and Abuse of Process on October 18, 2021. He argued that Ms. Carpenter's motion for new trial was unsupported by fact or in law. He further alleged that Ms. Carpenter filed an action against Ms. Abrams in city court after the trial court in the instant case indicated to the parties that it would deny Ms. Carpenter's motion for disqualification. According to Mr. Boudreaux, Ms. Carpenter's pleadings were frivolous and therefore sanctionable under La.Code Civ.P. art. 863.

On April 12, 2022, the hearing officer considered both Ms. Carpenter's and Mr. Boudreaux's contempt motions filed in June 2021. The hearing officer recommended denying Ms. Carpenter's contempt motion, granting Mr. Boudreaux's contempt motion related to Ms. Carpenter's failure to reimburse him for private school tuition, ordering Ms. Carpenter to reimburse Mr. Boudreaux $5,773.61 in private school tuition, and sentencing Ms. Carpenter to ten days in jail, with the sentenced suspended provided that Ms. Carpenter reimburse Mr. Boudreaux for the private school tuition and pay $1,500.00 in attorney fees. Both parties appealed the hearing officer's recommendations to the trial court.

Trial on the parties' cross-appeals of the hearing officer's recommendations and on Mr. Boudreaux's motion for sanctions was held on July 11, 2022. The trial court then signed a judgment on August 17, 2022, that denied Ms. Carpenter's contempt motion, but granted Mr. Boudreaux's contempt motion "as it relates only to her failure to pay private school tuition[.]" The judgment further sentenced Ms. Carpenter to forty-five days in jail, "to be added to her already suspended

6

sentences[,]" with "said sentence being suspended pending compliance of this Judgment and all payments therein as set forth below and [Ms. Carpenter] remaining current on said private school tuition obligation." The judgment also ordered Ms. Carpenter to pay Mr. Boudreaux $8,089.49, "representing private school tuition previously paid by Mr. Boudreaux, and attorney fees to The Johnson Firm in the amount of $17,587.50 within ninety (90) days of the date of the rendering of this Judgment."

The August 17, 2022 judgment also granted Mr. Boudreaux's motion for sanctions "[a]s a result of the unnecessary delay and increased cost of this litigation cause[d] by [Ms. Carpenter's] intentional and frivolous abuse of process[,]" and ordered that Ms. Carpenter "pay all court costs in this matter and attorney fees as it relates to these sanctions in the amount of $7,860.00 in attorney fees to The Johnson Firm within ninety days of the judgment."

Ms. Carpenter has appealed the trial court's August 2022 judgment, and asserts the following assignments of error:

1. The [trial] court erred when it found Appellant in Contempt for failure to pay private school tuition by wandering outside the clear and unambiguous language of the judgment.

2. The [trial] court erred when it granted Appellee's Motion for Sanctions without jurisdiction to impose sanctions and despite Appellee himself prolonging litigation.

3. The [trial] court erred when it denied Appellant's Rule for Contempt despite testimony of the Appellee where he admitted to failing to communicate with Appellant and failed to grant Appellant a right of first refusal.

## ANALYSIS

*Contempt of Court*:

7

Contempt of court is "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La.Code Civ.P. art. 221. Constructive contempt is any contempt other than a direct contempt[2] and includes "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]" La.Code Civ.P. art. 224(2).

The mover in a civil contempt proceeding bears the burden of proving contempt by a preponderance of the evidence. *Paradise Rod and Gun Club, Inc. v. Roy O. Martin Lumber Co., Inc.*, 14-1184, (La.App. 3 Cir. 4/1/15), 160 So.3d 626.

> Although a district court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person wilfully disobeyed a court order in violation of La.Code of Civil Proc. art. 224(2) must be based on a finding that the accused violated an order of the court "intentionally, knowingly, and purposefully, without justifiable excuse."

*Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied*, 90-990 (La. 5/29/98), 720 So.2d 343).

The standard of review for a trial court's determination of whether a party is in contempt for disobeying a court order is the abuse of discretion standard. *6th Ward/Crowley Gravity Drainage District v. Benoit*, 17-82 (La.App. 3 Cir. 10/4/17), 229 So.3d 590. "However, the trial court's 'predicate factual determinations are reviewed under the manifest error standard.'" *Id.* at 596 (quoting *Capital City Press, L.L.C. v. La. State Univ. Sys. Bd. of Supervisors*, 13-1803, 13-1804, p. 7 (La.App. 1 Cir. 12/30/14), 168 So.3d 669, 674).

---

[2] Direct contempt is "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La.Code Civ.P. art. 222.

In its oral reasons for finding Ms. Carpenter in contempt, the trial court stated:

> As it relates to the reimbursement claim for private school, which, again, was much of this conflict, I have a 2018 judgment, and nobody has been able to put any evidence on to me that changed the 2018 judgment. . . . So, the Court can only conclude that . . . if the testimony is what I heard suggests, that she did pay some at the beginning and that there was an accrued amount of roughly $8,000 for costs that were paid by the father while he maintains that she is responsible for costs, and the Court also wants to consider . . . it was confirmed by the Hearing Officer that the obligation remained with the mother. So I'm going to find the mother in contempt for failing to pay the ongoing private school costs[.]

Ms. Carpenter argues on appeal that the trial court erred in finding her in contempt of court because Mr. Boudreaux failed to prove that she violated a court order, much less willfully or intentionally. Ms. Carpenter points out that the 2018 consent judgment ordered her to pay private school tuition related only to Life Christian Academy, that there was no modification of that judgment pertaining to payment of private school tuition, and that her voluntary payments of private school tuition at Hamilton Christian were not equivalent to a court order requiring her to pay that tuition. She further argues that the trial court's reliance on the hearing officer's recommendation from August 2020 was misplaced.

In response, Mr. Boudreaux argues that the August 2020 hearing officer recommendation that denied Ms. Carpenter's request to include private school tuition in the child support calculation became a judgment of the court, and he contends that this judgment required Ms. Carpenter to pay the child's private school tuition at Hamilton Christian Academy. Mr. Boudreaux also suggests that finding otherwise would result in an erroneous outcome because it would allow Ms. Carpenter to enroll the child in any school in an attempt to evade her duty to pay tuition.

We agree with Ms. Carpenter that there is no trial court judgment that ordered her to pay the child's tuition at Hamilton Christian Academy, or to otherwise reimburse Mr. Boudreaux for any tuition that he paid after enrolling the child at Hamilton Christian as required by the March 2021 judgment. Rather, the only judgment specifically addressing the obligation to pay private school tuition is the January 2018 consent judgment that contemplated the child going to Life Christian Academy in the fall of 2018 and unambiguously ordered Ms. Carpenter to "pay 100% of the tuition and fees due Life Christian Academy associated with the minor child's attendance there." While the hearing officer denied Ms. Carpenter's subsequent request to include the cost of private school tuition at another school in the child support calculation, the denial of her request does not equate to a judgment of the court ordering her to pay any other private school tuition.

Without a judgment requiring Ms. Carpenter to pay private school tuition at Hamilton Christian, the trial court was manifestly erroneous in finding that Ms. Carpenter's failure to reimburse Mr. Boudreaux for tuition constituted contempt of court, and it abused its discretion in conditionally sentencing Ms. Carpenter to forty-five days in jail, ordering her to pay Mr. Boudreaux $8,089.49, and ordering her to pay $17,589.50 in attorney fees to The Johnson Firm. We therefore reverse the trial court's judgment to that extent.

Ms. Carpenter also argues on appeal that the trial court erred in denying her motion for contempt. She notes that the 2018 judgment requires a parent who "must be away or work overnight while having custody of the child" to give the other parent an opportunity to keep the child before making other arrangements. She then argues that Mr. Boudreaux should have been held in contempt for violating that provision because he testified that he allowed the child to stay the night with the child's

10

grandmother one night a weekend, and sometimes once during the week, while the child was in Mr. Boudreaux's custody.

In response, Mr. Boudreaux notes his testimony that the child did not spend the night with his grandmother when Mr. Boudreaux had to work and that Mr. Boudreaux used vacation time when he was scheduled to work nights so that he could spend time with the child. He also argues that Ms. Carpenter failed to present any evidence concerning the specific dates she alleged in her motion as dates that Mr. Boudreaux violated her right of first refusal.

At trial, Mr. Boudreaux testified that it was his understanding that the right of first refusal provision applied only when he had to be away overnight, and he explained that the child never stayed with his parents (the child's grandparents) when he was scheduled to work or otherwise had to be away. Rather, Mr. Boudreaux allowed his child to stay with the child's grandparents because he wanted his child to spend time with them and not because he needed childcare.

Mr. Boudreaux also testified as to his fluctuating and complicated shift-work schedule and explained that he used his vacation time on nights he was scheduled to both work and have custody of the child. He testified that he had made reasonable requests to Ms. Carpenter to accommodate his work schedule, but she denied his efforts. He also testified that after he used all of his vacation time, he did offer her the right of first refusal when he was scheduled to work nights, and that she always accepted the opportunity to keep the child during those times. Mr. Boudreaux also submitted into evidence messages that he sent to Ms. Carpenter via the Our Family Wizard system to let her know when he would be working nights.

Ms. Carpenter testified at trial that she did recall messages from Mr. Boudreaux about him having to work and that she never turned down any additional

time with the child that was offered. She also testified that she did not remember the specific dates she alleged in her motion as dates when Mr. Boudreaux was in violation of the right of first refusal, and that she could not "attest" to any specific dates without a calendar in front of her. Ms. Carpenter did not offer any other evidence regarding this issue.

In addition, Ms. Carpenter's counsel stated in closing arguments that while Ms. Carpenter's pleadings asked the court to find Mr. Boudreaux in contempt, and as her attorney, he was moving forward with the relief prayed for, counsel also stated that Ms. Carpenter asked him "to relay to the [trial] [c]ourt that she would be satisfied today if neither party was found in contempt" and that they could then "go on their own ways and settle their case that way."

In denying Ms. Carpenter's contempt claim regarding the right of first refusal, the trial court stated that, while it found it "troublesome" that Mr. Boudreaux would use vacation time when he was scheduled to work nights while having custody of the child, Ms. Carpenter nevertheless failed to present any testimony or documentary evidence in support of her claim.

After reviewing the testimony and evidence in the record, we find no error on the part of the trial court in denying Ms. Carpenter's contempt motion related to the right of first refusal, and we affirm the trial court's judgment to that extent.

Ms. Carpenter also argues on appeal that the trial court erred in not finding Mr. Boudreaux in contempt even though Mr. Boudreaux testified that he did not inform Ms. Carpenter that he had enrolled the child in a summer swim camp that the child attended while in his care. She notes that the trial court found Mr. Boudreaux to be in violation of La.Civ.Code art. 134(12) regarding communication and argues that it should have also found him in contempt.

At trial, Mr. Boudreaux testified that the 2018 judgment at issue required him to inform Ms. Carpenter of events or activities that family was invited to attend. He stated that the child was attending a week-long swimming camp, and that he had planned to tell Ms. Carpenter about the last day of the camp, where family members were invited to see what the children had learned during the week. However, Ms. Carpenter found out about the camp before that. Mr. Boudreaux testified that when she found out, she went to the camp, brought the child lunch from a restaurant, and made him throw away his lunch that his grandmother had packed for him. Mr. Boudreaux said that his mother (the child's grandmother) was then called because she was listed as an emergency contact, and that when his mother arrived, Ms. Carpenter did not let the child speak to her. He said that the child was "shook up" by the incident and did not want to go back to camp.

Ms. Carpenter testified at trial that she found out about the swimming camp during a Skype session with the child. Further, as noted previously, her counsel indicated that, while they were moving forward with her contempt motion as prayed for, Ms. Carpenter wanted to let the trial court know she would be satisfied if neither party was found in contempt.

In its reasons for ruling, the trial court admonished both parties concerning their continuous inability to communicate effectively about the child without resorting to litigation. As to Ms. Carpenter's motion for contempt regarding Mr. Boudreaux's alleged failure to communicate, the trial court stated as follows:

> [T]he mother asserts that the father has failed to allow her notice of any ongoing -- what the Court took noteworthy was that the father was asked on the bench if the mother would have put him in an extracurricular activity would he want to know about it, and he confirmed that. . . . So I would think under [La.Civ.Code art. 134(12)], he should have extended that to the mother . . . , but while the Court understands the father's concerns, the father did not follow the court

13

order and did not allow the mother to be put on notice of ongoing activities under [La.Civ.Code art.] 134[.]

However, the trial court ultimately concluded it was not holding either Mr. Boudreaux or Ms. Carpenter in contempt for failing to communicate. It noted that while it found Mr. Boudreaux should have communicated under La.Civ.Code art. 134, his actions did not rise to the level of contempt.

After reviewing the record, we find no error on the part of the trial court in denying Ms. Carpenter's contempt motion on the issue of communication.

*Sanctions*

Ms. Carpenter also appeals the trial court's judgment finding her liable for sanctions under La.Code Civ.P. art. 863 and ordering her to pay "all court costs in this matter and attorney fees as it relates to sanctions in the amount of $7,860.00 to the Johnson Firm."

Louisiana Code of Civil Procedure Article 863 states, in part:

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

. . . .

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the

14

amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

. . . .

G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.

As stated by this court in *Cooks v. Rodenbeck*, 97-1389, p. 8 (La.App. 3 Cir. 4/29/98), 711 So.2d 444, 449:

La.Code Civ.P. art. 863 sanctions are intended for only exceptional circumstances and are not to be used simply because the parties disagree about the correct resolution of a legal matter. [*Lavespere v. Brasher*, 96-190 (La.App. 3 Cir. 10/9/96); 688 So.2d 1166]. Failure to prevail does not trigger sanctions. *Id.* The slightest justification for the exercise of a legal right precludes the imposition of sanctions. *Id.*

A trial court's decision to award sanctions under La.Code Civ.P. art. 863 is reviewed for manifest error. *Blanchet v. Boudreaux*, 15-60 (La.App. 3 Cir. 8/19/15), 175 So.3d 460, *writ denied*, 15-2156 (La. 1/25/16), 185 So.3d 749.

In the instant matter, the trial court found that Ms. Carpenter's motion for new trial and related continuances were sanctionable under La.Code Civ.P. art. 863, as indicated by its oral reasons for ruling stating:[3]

As it relates to sanctions, the Court, in reviewing 863(b)(1) and -2, the Court finds proof sufficient that these matters were submitted improperly. While the motion for new trial was - the Court granted a hearing in the matter and tried the matter for two days, this Court finds that it caused unnecessary delay and certainly increased the cost of this litigation and that there was no well grounds which the court ruled in this motion for new trial, and in that much of the discussions, the extensions, the refixings and the modifications and the clear intent of

---

[3] We note that on appeal, Mr. Boudreaux discusses Ms. Carpenter's motion for disqualification and subsequent action purportedly filed against counsel in city court, in support of the trial court's award of sanctions against Ms. Carpenter, and Ms. Carpenter notes in response that the city court pleadings are not in evidence and cannot be considered. We note that under La.Code Civ.P. art. 863(G), the trial court is required to describe the conduct it deemed sanctionable, and the trial court limited the basis of its ruling to Ms. Carpenter's motion for new trial and related continuances. Therefore, we will review only whether the trial court erred in finding those filings sanctionable.

the law was frivolous and as a result thereof, the Court's going to award sanctions in this matter.

The only evidence in the record concerning Mr. Boudreaux's motion for sanctions is the suit record from January 31, 2018, forward, which was submitted by the parties by reference at the beginning of trial on the cross-appeals of the hearing officer's recommendations on the contempt issues and on the sanctions motion. Counsel addressed the motion for sanctions during closing argument only. No testimony or other evidence was submitted.

The record shows that following a judgment filed March 29, 2021, Ms. Carpenter, through counsel, filed a motion for new trial on March 31, 2021. The motion asserts that during trial, Ms. Carpenter was unrepresented by counsel, that she "was unable to provide detrimental evidence to the [trial] [c]ourt[,]" and that "proceeding to trial without representation led her to being in a disadvantageous position in not being able to properly submit evidence to the court." The motion also alleges that the trial court "wrongfully found her in contempt, erroneously revoked her pauper status[,] and the modification was not in the best interest of the minor child." Further, the motion alleges that the appointment of the parent facilitator was "improper as the parties have a conflict with the currently appointed facilitator[,]" and the trial "court failed to address an exchange location for the parties."

On April 1, 2021, the trial court signed an order scheduling a hearing on the motion for new trial for May 13, 2021. In response, Mr. Boudreaux filed a Dilatory Exception, Opposition & Motion to Continue Hearing on May 6, 2021, arguing that the motion for new trial should not be heard prior to Ms. Carpenter submitting a memorandum in support of her motion. Mr. Boudreaux also noted that his counsel

was unavailable on May 13, 2021, due to a trial scheduled in another matter and that Ms. Carpenter's counsel indicated no objection to a continuance. Mr. Boudreaux's exception and motion was set for hearing on June 29, 2021.

According to the trial court's minutes from June 29, 2021, counsel noted on the record following a pretrial conference that the matter was refixed to July 20, 2021. Then, according to the minutes from July 19, 2021, an order was signed refixing the matter from July 20, 2021, to September 21, 2021. The minutes further reflect that no appearances were made by either party on July 19, 2021.

The minutes from September 21, 2021, state that "[f]ollowing a pre-trial conference, the [trial] [c]ourt denies the Motion for New Trial." However, the record before us on appeal does not contain a judgment denying Ms. Carpenter's motion for new trial, nor does it contain a transcript from any hearing, pretrial conference, or refixing held in connection with the motion. The record also does not contain the transcript from the March 2021 trial.

We first conclude that the trial court was manifestly erroneous in finding that Ms. Carpenter's motion for new trial was in violation of and/or otherwise sanctionable under La.Code Civ.P. art. 863(B)(2), which requires each assertion in a pleading to be "warranted by existing law, or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Again, even the "slightest justification" for the filing precludes the imposition of sanctions. *Cooks*, 711 So.2d at 449.

Louisiana law contemplates that a new trial shall be granted, *inter alia*, "when the verdict or judgment appears clearly contrary to the law and the evidence[.]" La.Code Civ.P. art. 1972(1). Further, "[a] new trial may be granted in any case if

17

there is good ground therefor, except as otherwise provided by law." La.Code Civ.P. art. 1973.

On appeal, Mr. Boudreaux argues Ms. Carpenter's motion for new trial was sanctionable because it was based solely on the fact that Ms. Carpenter was unrepresented at trial. He suggests that this was a frivolous argument because the trial court cautioned Ms. Carpenter "in the perils of proceeding as a pro se litigant."

However, the transcript from the underlying March 2021 trial is not in the record. "As a court of appeal, this Court is a court of record, and our review is therefore limited to evidence in the record before us." *Martin v. Martin*, 14-749, p. 9 (La.App. 5 Cir. 2/25/15), 168 So.3d 829, 835. With no record of what was said during trial concerning Ms. Carpenter appearing pro se, the circumstances leading to her proceeding without representation, and the circumstances surrounding any attempts to submit evidence, there is no support in the record upon which to conclude that the asserted grounds for new trial were frivolous.

We additionally note that, contrary to Mr. Boudreaux's assertion, Ms. Carpenter's motion for new trial unambiguously asserted grounds other than those related to her proceeding pro se, including alleged error in the trial court's revocation of her pauper status, its appointment of a parent facilitator despite a conflict of interest, its omission of an exchange location, and its ruling finding Ms. Carpenter in contempt. While the trial court ultimately denied Ms. Carpenter's motion, this alone does not warrant the issuance of sanctions. *Cooks*, 711 So.2d 444. There is no indication in the record as to what was argued by the parties in connection with the merits of Ms. Carpenter's motion for new trial, much less what occurred at trial. The record is devoid of any evidence upon which to conclude that the alleged grounds for new trial asserted in Ms. Carpenter's motion were wholly unjustified

and/or frivolous, or that her motion otherwise constituted an "exceptional circumstance" warranting sanctions. *Id.* at 449.

We also conclude that the trial court was manifestly erroneous in finding that Ms. Carpenter's motion for new trial was sanctionable under La.Code Civ.P. art. 863(B)(1). There is no testimony or other evidence in the record to support a finding that her motion was filed for the purpose of causing delay or increased cost in litigation. Rather, the record reflects only that the motion for new trial was filed timely and challenged various findings by the trial court, as permitted by La.Code Civ.P. arts. 1971, et. seq. We additionally note that it was Mr. Boudreaux, rather than Ms. Carpenter, who filed a motion to continue the initial hearing date. Further, while this court does not have the benefit of any transcript pertaining to any pretrial conferences where the motion for new trial was refixed by either agreement of the parties or by the trial court, and therefore we cannot determine the extent that Ms. Carpenter's actions or representations contributed to any continuances, we note that sanctions contemplated by La.Code Civ.P. art. 863 "are limited to assertions made in signed pleadings." *Martin*, 168 So.2d at 835. Therefore, any representations made during the pretrial conferences are irrelevant to the issue before us.

Therefore, we reverse the trial court's ruling granting Mr. Boudreaux's motion for sanctions and finding Ms. Carpenter liable for court costs related to the sanctions proceedings and $7,860.00 in attorney fees. Each party is to bear their own court costs related to the sanctions proceedings.

**DECREE**

For the reasons set forth above, we reverse the trial court's judgment to the extent that it found Ms. Carpenter in contempt for failing to reimburse Mr. Boudreaux for private school tuition, ordered Ms. Carpenter to pay Mr. Boudreaux

19

$8,089.49 for private school tuition he previously paid, ordered Ms. Carpenter to pay the Johnson Firm $17,587.50, and sentenced Ms. Carpenter to forty-five days in jail, with said sentence being suspended pending various conditions, including remaining current on the payment of private school tuition. There is no court order in effect requiring Ms. Carpenter to pay the child's private school tuition at Hamilton Christian Academy, or to otherwise reimburse Mr. Boudreaux for private school tuition that he has paid.

We further reverse the trial court's judgment to the extent that it granted Mr. Boudreaux's motion for sanctions and ordered Ms. Carpenter to pay all court costs and attorney fees related to the sanctions proceedings in the amount of $7,860.00 to the Johnson Firm. The parties are to bear their own costs as it relates to the trial court proceedings involving sanctions. The judgment of the trial court is otherwise affirmed.

Costs of this appeal are assessed equally to both parties.

**REVERSED IN PART; AFFIRMED IN PART.**

20